UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BALMORE ALEXANDER VILLATORO,<br><br>  Plaintiff<br><br>v.<br><br>PRESTON, et. al.,<br><br>  Defendants | Case No.: 3:16-cv-00531-MMD-WGC<br><br>**Report & Recommendation of**<br>**United States Magistrate Judge**<br><br>Re: ECF No. 61 |

  This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

  Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 61, 61-1 to 61-10.) Plaintiff filed a response. (ECF No. 70.) Defendants filed a reply. (ECF No. 71.)

  After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part. The motion should be denied without prejudice with respect to the Eighth Amendment deliberate indifference to serious medical needs and conditions of confinement claims as Plaintiff was not given time to review the medical records filed under seal that Defendants rely on in support of their motion. The motion should be granted with respect to the due process claim based on Plaintiff's classification as a member of a Security Threat Group (STG) based on a finding he was affiliated with the Sureno gang, and housing in administrative segregation for eight to nine months.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Second Amended Complaint (SAC), ECF No. 9.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC) and Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Bobby Preston, Don Poag, Tara Carpenter, Dwayne Baze, Dr. Romeo Aranas, Katherine Hegge, Isidro Baca, Jorja Powers, and David Tristan.

On screening, Plaintiff was allowed to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Aranas and Hegge and an Eighth Amendment conditions of confinement claim against Preston, Poag, Carpenter and Baze in Count I. These claims are based on allegations that Plaintiff was born legally blind, and he requested transitional prescription eyeglasses but his request was denied, and Dr. Aranas and Hegge failed to do anything. Plaintiff was forced to attach a clip-on tinted lens to his prescription glasses in order to improve the vision in his right eye, and these were confiscated by Preston and Poag, who were aware of his vision issues. Carpenter and Baze were also aware of his vision issues, yet they still placed him on the top-tier. Without his glasses, he has blurred vision and injured himself while walking down the stairs. He alleges that Dr. Aranas and Hegge disregarded his need for transitional prescription eyeglasses, leaving him vulnerable to a risk of harm.

Plaintiff was also allowed to proceed with a Fourteenth Amendment due process claim in Count II against defendants Baca, Powers and Tristan, based on allegations that in May of 2013, Plaintiff was transferred to NNCC and placed into administrative segregation because he was found to be in a security threat group (STG). He avers that later, after NNCC officials completed

an investigation, he was given a letter from the associate warden that he could return to general population at NNCC. On June 22, 2015, he was transferred to NNCC for medical reasons, and was again placed into administrative segregation. He asked why he was not placed in general population, and was told that he was in a STG, but Plaintiff asserts he has never associated with a disruptive gang. He raised the issue in a grievance with Baca, Powers and Tristan, but they failed to intervene. As a result, he remained in administrative segregation for eight to nine months. (Screening Order, ECF No. 10.)

Defendants move for summary judgment, arguing: (1) the Eighth Amendment conditions of confinement claim fails because Defendants did not know of and disregard an excessive risk to Plaintiff's safety when he was assigned to the top-tier and had to navigate stairs without his glasses; (2) Hegge and Dr. Aranas were not deliberately indifferent to his serious medical needs; (3) Plaintiff's due process claim fails because he was validated as a gang member and was housed in administrative segregation, where he received periodic due process reviews; therefore, he received all the process he was legally due; and (4) they are entitled to qualified immunity.

## **II. LEGAL STANDARD**

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

4

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Conditions of Confinement and Eighth Amendment Deliberate Indifference to Serious Medical Need**

Defendants argue that they are entitled to summary judgment because Plaintiff intentionally altered his glasses and they were rightfully confiscated as unauthorized, and he has been housed at NNCC and LCC in top-tier units and should know how to walk downstairs in a safe and careful manner, with or without his glasses. In addition, they contend that neither Preston, Poag nor Carpenter knew it was an excessive risk for Plaintiff to navigate stars without glasses.

Defendants also argue they were not deliberately indifferent to Plaintiff's serious medical needs because Plaintiff was advised that NDOC does not issue eyeglasses with transitional lenses and his current sunglasses were adequate, and that if he needed replacement glasses or to be evaluated for medical concerns he was advised to file a request. Plaintiff did file requests, which were denied, but he did receive new bi-focal glasses. Defendants argue that the failure to provide him transitional lenses because he was unhappy with state-issued glasses and sunglasses does not amount to deliberate indifference.

Defendants rely on Plaintiff's medical records to support these arguments, including medical records filed under seal; however, Plaintiff states that he was not given an opportunity to review the medical records before filing his response to their motion. (ECF No. 70 at 18.) Defendants do not address this contention in their reply brief. Moreover, the court has since granted in part Plaintiff's motion to have a reader to assist him given his serious vision impairments. (*See* ECF No. 83.)

Therefore, Defendants' motion for summary judgment should be denied without prejudice with respect to the Eighth Amendment deliberate indifference to serious medical needs and conditions of confinement claims. Defendants should be permitted to file a renewed motion for summary judgment following any order adopting and accepting this Report and Recommendation. They should be given leave to file Plaintiff's medical records under seal, and Plaintiff should be given an opportunity to review the exhibits Defendants rely on in support of their motion, including any medical records filed under seal, with his reader, and then should be permitted to file his response. Defendants should then file a reply.

**B. Due Process**

When placement in administrative segregation impairs an inmate's liberty interest, due process must be provided. *See Bruce v. Ylst,* 351 F.3d 1283, 1287 (9th Cir. 2003) (citing *Toussaint v. McCarthy,* 801 F.2d 1080, 1099 (9th Cir. 1986)), *overruled on other grounds by Sandin v. Connor,* 515 U.S. 471 (1995); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause itself does not give prisoners a liberty interest in avoiding transfer to more adverse conditions of confinement. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). States may create liberty interests which are protected by the Due Process Clause when the change in conditions of confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. While temporary or short-term confinement in administrative segregation generally does not implicate a protected liberty interest, the imposition of an indeterminate term in administrative segregation as a result of an STG gang validation constitutes a greater deprivation, and courts have held that such conduct implicates a protected liberty interest. *See Collins v. Collins,* No. 3:16-cv-00111-MMD-WGC, 2019 WL 5295541, at *13 (D. Nev. May 14, 2019), *report & recommendation adopted,* 2019 WL 3573666 (D. Nev. Aug. 6, 2019); *Suarez v. Kate,* No. 2:12-cv-2048 KJM EFB, 2014 WL 996018, at * 8 (E.D. Cal. Mar. 13, 2014 (placement in SHU for indefinite term based on gang affiliation implicated protected liberty interest such that defendants were constitutionally required to provide the plaintiff with certain minimal procedural due process protections); *Castro v. Prouty*, No. 1:09-cv01763 GBC PC, 2011 WL 529493, at * 3 (E.D. Cal. Feb. 3, 2011) (citing *Wilkinson*, 545 U.S. at 223-25, and assumed that confinement in the SHU for an indeterminate period implicates a protected liberty interest), *aff'd*, 478 Fed.Appx. 449 (9th Cir. 2012); *Madrid v. Gomez*, 889 F.Supp. 1146, 1271 (N.D. Cal. Jan. 10, 1995) ("defendants

may not confine prison gang members in the SHU, nor hold them there on indeterminate terms, without providing them the quantum of procedural due process required by the Constitution").

The Ninth Circuit has held that when an inmate is validated as a gang member, "due process require[s] prison officials to give [the inmate] an opportunity to present his views to the 'critical decisionmaker.'" *Castro v. Terhune*, 712 F.3d 1304, 1308 (9th Cir. 2013) (citing its prior reversal and remand in that case, *Castro v. Terhune*, 29 Fed.Appx. 463, 466 (9th Cir. 2002) (*Castro I*)). In *Castro I,* the Ninth Circuit held that the inmate may not "be entitled to a formal judicial hearing or the full range of due process protections, [but] due process does require some notice of the charges against him and a meaningful opportunity to present his views to the critical decisionmakers." *Castro I,* 29 Fed.Appx. at 466 (citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); *Madrid*, 889 F.Supp. at 1277); *see also Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (inmate is entitled to "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation")).

Defendants argue that Plaintiff was validated as a prison gang member, and he was informed his STG affiliation was upheld, and that he could not be housed in general population at NNCC. From June 2015 to March 2016, he was housed in administrative segregation at NNCC, and was also informed he could not walk the general population yard at NNCC due to his STG affiliation. The contend that Plaintiff received periodic due process reviews regarding his placement at NNCC, and was informed he would remain in administrative segregation until his medical treatment was completed. Therefore, Defendants argue he received all process he was due.

Plaintiff argues that he was in administrative segregation for eight to nine months under conditions that were much more restrictive than general population, which caused him emotional distress.

Plaintiff was incarcerated in NDOC and housed at NNCC in 2009. (ECF No. 61-5 at 2.)

There is an STG identification/validation form dated August 11, 2009, validating Plaintiff as having a Sureno gang affiliation. (ECF No. 61-4 at 2-5.) He had an initial classification hearing on August 19, 2009. (ECF No. 61-5 at 2.)

On September 29, 2009, he was transferred from NNCC to LCC. (ECF No. 61-5 at 2.) He indicated he had no problems at LCC, and requested general population housing. He was placed initially into general population housing. (ECF No. 61-5 at 2.)

Plaintiff was designated as being suspected of being affiliated with a STG on October 19, 2009, and was told he had 10 days to request at STG due process hearing in writing. (ECF No. 61-3 at 16.) On October 21, 2009, Plaintiff sent a kite stating that he was not in any gang just because he had a tattoo. He was told in response that he would be put on the list for a due process hearing. (ECF No. 61-3 at 17.)

Plaintiff had a classification review on February 9, 2010. (ECF No. 61-5 at 2.)

There is a STG notice of due process hearing dated April 29, 2010, at LCC, indicating Plaintiff would have a hearing on April 30, 2010. (ECF No. 61-3 at 15.) Plaintiff had his due process classification hearing on April 30, 2010, noting he was validated, although he said his tattoo was from when he was a kid and he did not do it anymore, but the committee voted the validation would stand. (ECF No. 61-5 at 3.)

He had classification reviews on August 6, 2010, February 22, 2011, and August 17, 2011. (ECF No. 61-5 at 3.) (ECF No. 61-5 at 3.) On September 22, 2011, the STG hearing

results were upheld and it was noted that his affiliation would stand. (ECF No. 61-5 at 3.) He had additional classification reviews on February 13, 2012, August 15, 2012, and then on February 11, 2013. (ECF No. 61-5 at 3.)

On May 16, 2013, he was transferred to NNCC while he attended a court proceeding, and then was to return to LCC. (ECF No. 61-5 at 2.) It was noted he would remain in administrative segregation until he returned to LCC. (ECF No. 61-5 at 4.)

He had a classification due process hearing at NNCC on May 22, 2013. It was noted that due to a lack of information in NOTIS, it was recommended that Plaintiff be returned to the general population yard. (ECF No. 61-5 at 4.) The May 22, 2013, classification results notice from LCC states that Plaintiff was placed in administrative segregation per Warden Baca pending investigation for possible riot, but there was no record in NOTIS about any incidents, and so there was a recommendation to return him to general population at NNCC. (ECF No. 61-3 at 11.) There is a notification of classification hearing for STG affiliation at NNCC on June 11, 2013. (ECF No. 61-3 at 13.)

Plaintiff had a classification/due process hearing on June 10, 2013. It was noted that he was placed in administrative segregation, but then was put into general population at NNCC due to misinformation. He was to remain in administrative segregation pending his return to LCC. (ECF No. 61-5 at 4.) A June 10, 2013, classification results notice states Plaintiff's request was disapproved due to his prison gang affiliation, STG status, Sureno. (ECF No. 61-3 at 7.)

On June 18, 2013, he was transferred back to LCC. (ECF No. 61-5 at 2.)

He had classification reviews on January 21, 2014, July 23, 2014, and February 4, 2015. (ECF No. 61-5 at 4-5) On June 18, 2015, he was approved for transfer to NNCC for medical treat and return at the request of LCC medical. (ECF No. 61-5 at 5.)

On June 25, 2015, he was transferred to NNCC. (ECF No. 61-5 at 2.) He was received at NNCC as a "PS" (protective segregation) inmate. He was placed in close custody at NNCC, and was noted he would need a due process hearing. (ECF No. 61-5 at 5.) There is June 26, 2015, notification that a classification hearing was set for July 1, 2015 at NNCC because he was STG, Sureno. (ECF No. 61-3 at 6.)

Plaintiff had a classification due process hearing on July 6, 2015, and was placed into administrative segregation at NNCC pending treat and return to LCC. (ECF No. 61-5 at 5.) The classification results notice dated July 6, 2015, disapproves Plaintiff's request because of his STG Sureno prison gang affiliation. (ECF No. 61-3 at 10.)

Plaintiff had an administrative segregation review on August 7, 2015. (ECF No. 61-5 at 5.) He had another administrative segregation review on September 28, 2015, he was not yet cleared by medical and so was to remain in administrative segregation. (ECF No. 61-5 at 5.)

Plaintiff had an administrative segregation review on October 21, 2015, and he had still not been cleared by medical. It was noted he was not appropriate for NNCC general population, and would remain in administrative segregation pending completion of his medical treatment. (ECF No. 61-5 at 5.) A classification results notice from October 21, 2015, states that Plaintiff's request was deferred for 30 days and he was to remain in administrative segregation pending medical, and that he was not appropriate for NNCC general population due to STG status as a Sureno. (ECF No. 61-3 at 5.)

Plaintiff had an administrative segregation review on December 1, 2015, noting he was not yet cleared by medical and was not appropriate for NNCC general population, so he would remain in administrative segregation pending completion of his medical treatment. (ECF No. 61-5 at 5.)

Plaintiff had an administrative segregation review on December 30, 2015, and had still not been cleared by medical. It was again found that he should remain in administrative segregation pending completion of his medical treatment. An update to the case note states that he would remain in administrative due to his STG status pending clearance by medical. (ECF No. 61-5 at 5.) A classification results notice from December 30, 2015, states that Plaintiff was pending due to a possible conflict with general population placement. (ECF No. 61-3 at 4.)

Plaintiff had a monthly administrative segregation review on January 27, 2016, stating that his medical treat and return was not yet complete, and the committee found he should remain in administrative segregation while he completed his treatment and then return to LCC. (ECF No. 61-5 at 5.) A classification results notice from January 27, 2016, states that Plaintiff's request was disapproved due to his prison gang affiliation. (ECF No. 61-3 at 8.)

On February 19, 2016, Plaintiff was seen for classification. There was a recommendation that he be transferred back to LCC in general population, though there is a note he was STG. (ECF No. 61-5 at 5, 6.)

On March 1, 2016, he was transferred to LCC. (ECF No. 61-5 at 2.) He was received at LCC and it was noted he was to go to general population, but he was placed in administrative segregation for safety and security pending general population bed space. (ECF No. 61-5 at 6.)

There is a notification of classification hearing dated March 1, 2016, indicating Plaintiff had been moved to a lock up area at LCC, and would appear before an administrative segregation classification committee on March 4, 2016. (ECF No. 61-3 at 3.) Plaintiff had a classification due process hearing on March 4, 2016. He had been placed in administrative segregation pending general population bed space and would be moved when a bed was available. (ECF No. 61-5 at 6.) The classification results notice from March 4, 2016, at LCC,

indicated that Plaintiff could now be re-integrated, noting that he was placed in administrative segregation pending general population bed space. (ECF No. 61-3 at 2.)

Plaintiff filed an informal level grievance about being housed in administrative segregation on August 4, 2015, stating that he did not have a problem with anyone, and did not run with gangs. (ECF No. 61-6 at 3.) J. Powers responded to the informal level grievance, stating that he was transferred to NNCC for medical treatment and could not walk the NNCC general population yard due to his STG affiliation as a Sureno. He was advised he would be returned to LCC upon his release from the doctor. Powers also indicated he checked and Plaintiff had been seen by psychology staff twice, on September 4 and 27, 2015, and reported no issues. (ECF No. 61-6 at 2.)

Plaintiff filed a first level grievance on October 1, 2015, reiterating his claim that he did not run with any gang or have a problem with anyone. (ECF No. 61-6 at 5.)

Baca responded to the first level grievance on November 25, 2015, stating that Plaintiff was validated as a member of the 18th St. STG on August 12, 2009[1], and he appealed that validation on April 30, 2010, which was denied with the validation determined to stand. This was confirmed by the deputy director on September 22, 2011, and the STG affiliation was upheld. Due to his STG validation, he could not be housed in the NNCC general population yard. He would remain in administrative segregation until his medical treatment is complete and then would return to LCC. (ECF No. 61-6 at 4.)

Plaintiff filed a second level grievance on December 18, 2015, stating he did not belong to any gang. (ECF No. 61-6 at 7.)

---

[1] It says August 12, 2019, but the records indicate this was in 2009.

D. Tristan responded to the second level grievance on September 15, 2016[2], and denied the grievance, finding Plaintiff was answered correctly at the informal and first levels: he was validated in 2009, and appealed in 2010, and his appeal was denied so he remained validated. (ECF No. 61-6 at 6.)

The evidence demonstrates that Plaintiff received several due process hearings where he was validated as having a gang affiliation and therefore classified as STG. During the time period at issue, after he was transferred to NNCC in June of 2015, he had a due process hearing on July 6, 2015, where his STG status was upheld. He received subsequent reviews in September, October, and twice in December of 2015, and then in January and February of 2016. He was transferred back to LCC in March of 2014, where he was given another due process hearing, and was held in administrative segregation pending the opening of bed space in general population.

Therefore, the record supports Defendants' contention that Plaintiff received all the legal process he was due in the form of due process hearings and periodic classification reviews. As a result, summary judgment should be granted in favor of Baca, Powers, and Tristan.

As a result of this conclusion, the court need not reach Defendants' qualified immunity argument.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' Motion for Summary Judgment (ECF No. 61) as follows: (1) the motion should be **GRANTED** as to the due process claim in Count II against Baca, Powers and Tristan; and (2) the motion should be **DENIED WITHOUT**

---

[2] It is unclear why Tristan did not respond for nine months.

**PREJUDICE** with respect to the Eighth Amendment deliberate indifference to serious medical needs and conditions of confinement claims in Count I.

If this Report and Recommendation is adopted and accepted, the remaining Defendants should be given 30 days to file a renewed motion for summary judgment as to the Eighth Amendment claims in Count I. They should be given leave to file Plaintiff's sensitive medical records under seal. They should be directed to ensure that Plaintiff is given ample opportunity to review any records filed in support of their renewed motion, including any records filed under seal, along with his reader, before filing a response to the motion for summary judgment. The response and reply briefing should be due in accordance with the Local Rules.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 10, 2020

                                                                                 _____
                                                                                 William G. Cobb
                                                                                 United States Magistrate Judge